IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESS T. LAMMERS,<br><br>    Plaintiff,<br><br>vs.<br><br>COOPERATIVE PRODUCERS, INC. (CPI),<br><br>    Defendant. | 8:22CV65<br><br>MEMORANDUM<br>AND ORDER |

  Plaintiff, a non-prisoner, sues a prospective employer for failing to hire him due to his disability. Plaintiff purports to bring suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*; the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1101 *et seq.*; and 42 U.S.C. § 1983. (Filing 1 at CM/ECF p. 1.) Plaintiff has been given leave to proceed in forma pauperis. (Filing 5.) The court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

  Plaintiff sues Cooperative Producers, Inc., otherwise known as CPI, an agricultural cooperative. Plaintiff alleges that he repeatedly applied for a "custom applicator" or "commercial chemical custom applicator" job with CPI, but he was not hired. Plaintiff states that the position required a commercial chemical applicators' license from the Nebraska Department of Agriculture, which Plaintiff

has[1]; however, CPI also "preferred" applicants to have a "CDL[2]," which Plaintiff apparently does not have and which Plaintiff asked CPI to waive as a "preferred qualification" for the job. After Plaintiff made his waiver request during an interview with CPI, the company "cho[]se to terminate conversations about employment with CPI." (Filing 1 at CM/ECF p. 2.)

Plaintiff alleges that he has an undefined "documented disability, or a record of a documented disability from a public agency (Nebraska Vocational rehabilitation)." (Filing 1 at CM/ECF pp. 1-2.) An exhibit attached to Plaintiff's Complaint contains a letter dated May 22, 2012, from a "vocational rehabilitation employment specialist" with the Nebraska Department of Education stating that Plaintiff "is a person with a severe disability that qualifies him for consideration under the Schedule A hiring authority." (Filing 1 at CM/ECF p. 5.) Again, the nature of Plaintiff's "disability" is unclear, nor is it clear that CPI knew of such letter. Also attached to Plaintiff's Complaint are medical records from 2000, 2001, 2004, and 2012 showing treatment for a leg injury from a car accident. (Filing 1-1 at CM/ECF pp. 1-10.) The 2012 report from Dr. Brent Adamson of Kearney Orthopedic & Sports Medicine imposes the following work restrictions on Plaintiff: "Maximum one hour at a time on his feet, 4 hours per day, maximum of 25 lbs repetitive lifting, 50 lbs occasional lifting."[3] (Filing 1-1 at CM/ECF p. 10.)

Plaintiff alleges that he filed a complaint with the Nebraska Equal Opportunity Commission, but it is not attached to the Complaint in this case. Plaintiff has attached

---

[1] Contrary to Plaintiff's allegations, the position announcement that Plaintiff has attached to the Complaint actually states that an applicator's license is a "preferred," not a "required," qualification. (Filing 1 at CM/ECF p. 11.)

[2] Presumably, "CDL" means a commercial driver's license.

[3] The position for which Plaintiff applied requires the "[a]bility to lift up to 50 to 100 pounds of force occasionally and to sit, stand, climb, balance, stoop, kneel, crouch, or crawl." (Filing 1 at CM/ECF p. 13.)

to the Complaint a right-to-sue notice dated December 8, 2021. This action was filed on February 18, 2022. Plaintiff requests money damages.

## II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (internal quotation marks and citations omitted). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. ADA & NFEPA Claims

Plaintiff purports to bring disability-discrimination claims under the ADA and the NFEPA for CPI's failure to hire him for a job after he requested that CPI waive one of its "preferred qualifications" for the job as an accommodation for Plaintiff's

disability. Specifically, Plaintiff complains that Defendant failed to accommodate his disability and that it retaliated against him for requesting an accommodation during a job interview.

### 1. Exhaustion

To pursue disability-discrimination claims under the ADA and the NFEPA, a plaintiff must first exhaust his administrative remedies. *See* 42 U.S.C. § 12117(a) (stating that the remedies and procedures set forth in Title VII, including those pertaining to exhaustion, apply to disability-discrimination claims); *Carter v. Metro. Cmty. Coll.*, No. 8:16CV44, 2017 WL 435750, at *5 (D. Neb. Jan. 31, 2017) ("The NFEPA also requires a plaintiff to exhaust her statutory administrative remedies."). Specifically, a plaintiff is required to seek relief through the Equal Employment Opportunity Commission ("EEOC") or the Nebraska Equal Opportunity Commission ("NEOC") prior to filing suit in this court, and a plaintiff may not bring a claim that was not included in the administrative charge to the EEOC or the NEOC. *Lindeman v. Saint Luke's Hosp. of Kansas City*, 899 F.3d 603, 608 (8th Cir. 2018) (plaintiff must administratively exhaust specific claim under ADA prior to filing suit); *Russell v. TG Missouri Corp.*, 340 F.3d 735, 748 (8th Cir. 2003) (same).

Plaintiff alleges that he received a right-to-sue letter as evidence of such exhaustion (and he has attached a copy of it to the Complaint), but he has failed to file the NEOC complaint in order to establish that the claim he brings in this court was actually raised in his NEOC complaint. The court will give Plaintiff leave to do so.

### 2. Substance of Disability-Discrimination Claim

"Title I of the ADA is the exclusive remedy for claims of disability discrimination in employment." *Nahkahyen-Clearsand v. Dep't of Health & Hum. Servs.*, No. 8:17CV43, 2017 WL 1283494, at *3 (D. Neb. Apr. 5, 2017) (Kopf, J.) (citing *Neisler v. Tucker*, 807 F.3d 225, 227 (7th Cir. 2015)). Because the NFEPA mirrors the ADA, the court may look to federal ADA precedent when interpreting

the NFEPA, *Powley v. Rail Crew Xpress, LLC*, 25 F.4th 610, 613 (8th Cir. 2022), and the court need not conduct a separate analysis of Plaintiff's NFEPA claim, *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1106 n.2 (8th Cir. 2016).

Title I of the ADA prohibits "discrimination against a qualified individual with a disability because of the disability of such individual in regard to job application procedures [and] the hiring . . . of employees." 42 U.S.C. § 12112(a). Such "discrimination" includes "denying employment opportunities to a job applicant . . . who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant" and "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. §§ 12112(b)(5)(A) & (B).

A "qualified individual" must be able to perform the essential functions of the employment position, with or without reasonable accommodation. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2 (the term "qualified" "means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position."). "Disability" under the ADA means that the individual (a) has a physical or mental impairment that substantially limits one or more major life activities; (b) has a record of such an impairment; or (c) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(2); Neb. Rev. Stat. § 48-1102. "An individual may establish coverage under any one or more of these three prongs of the definition of disability. . . ." 29 C.F.R. § 1630.2(g)(2).

"An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general

population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). "The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1). As used in the "disability" definition, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

### a. Disparate Treatment

Without direct evidence of discrimination, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to disparate-treatment claims of disability discrimination. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016).

> The plaintiff first has the burden of establishing a prima facie case: (1) that the plaintiff was disabled within the meaning of the ADA; (2) that the plaintiff was qualified to perform the essential functions of the job; and (3) a causal connection between an adverse employment action and the disability. The burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action. Finally, the burden shifts back to the employee to show that the proffered reason was, in reality, a pretext for discrimination.

*Id*. The same analysis applies under the NFEPA. *Marshall v. Eyecare Specialties, P.C. of Lincoln*, 876 N.W.2d 372, 382 (Neb. 2016); *Jackson v. Pour*, No. A-19-387, 2020 WL 897638, at *5 (Neb. Ct. App. Feb. 25, 2020), *review denied* (May 19, 2020).

### b. Failure to Accommodate

Under the ADA, an employer must provide reasonable accommodations to an otherwise qualified employee with a disability unless the accommodation would provide an undue hardship on the employer's business. *See* 42 U.S.C. § 12112(b)(5)(A). To state a claim for failure to accommodate, Plaintiff must allege "'both a prima facie case of discrimination based on [his] disability and a failure to accommodate it.'" *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 631 (8th Cir. 2016) (quoting *Schaffhauser v. United Parcel Serv., Inc.,* 794 F.3d 899, 905 (8th Cir. 2015)). The plaintiff then has the burden to show that the proposed accommodation is possible, *Kallail v. Alliant Energy Corporate Servs., Inc*., 691 F.3d 925, 932 (8th Cir. 2012); "'that the requested accommodation is reasonable on its face, i.e., ordinarily or in the run of cases,'" *Orr v. City of Rogers*, 232 F. Supp. 3d 1052, 1061 (W.D. Ark. 2017) (quoting *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004) (internal quotation marks omitted)), and *Ramos v. Valmont Indus., Inc.*, No. 8:18CV313, 2018 WL 5840764, at *2 (D. Neb. Nov. 8, 2018); and that the accommodation would permit Plaintiff to perform the essential functions of the job. *Kallail*, 691 F.3d at 932.

### c. Retaliation for Requesting Accommodation

Plaintiff also alleges he was retaliated against for requesting a reasonable accommodation. For a retaliation claim under the ADA and NFEPA, there must be either direct evidence of retaliation, or circumstantial evidence that results in an inference of retaliation when examined under the *McDonnell Douglas* burden-shifting framework. *Canning v. Creighton Univ*., No. 4:18-CV-3023, 2019 WL 4671180, at *10 (D. Neb. Sept. 25, 2019) (citing *Hustvet v. Allina Health System*, 910 F.3d 399, 412 (8th Cir. 2018)). Under the burden-shifting framework, the plaintiff's evidence must demonstrate a prima facie case by showing three elements: (1) the plaintiff engaged in protected activity; (2) the occurrence of an adverse employment action; and (3) a causal connection between the adverse action and the

7

protected activity. *Id.* Requesting a reasonable accommodation is a protected activity. *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 907-08 (8th Cir. 2010). Further, "[a]n individual who is adjudged not to be a qualified individual with a disability may still pursue a retaliation claim under the ADA as long as [he] had a good faith belief that [a] requested accommodation was appropriate." *Id*. at 907 (internal quotation marks and citation omitted).

### d.  Sufficiency of Plaintiff's Complaint

"[U]nder a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case," *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002), overruled in part on other grounds by Twombly,* 550 U.S. 544. Even so, the elements of a successful ADA claim are still "'part of the background against which a plausibility determination should be made.'" *Cook v. George's, Inc.*, 952 F.3d 935, 939 (8th Cir. 2020) (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (quotation omitted)). "The court's task, then, is not to determine whether the Complaint pleads the elements of a prima facie case of discrimination under the *McDonnell Douglas* framework, but to determine whether the Complaint alleges facts showing plausibly that [Defendant] has discriminated against Plaintiff based on [his] . . . disability." *Smith v. PayPal, Inc.*, No. 8:12CV226, 2013 WL 2444032, at *11 (D. Neb. June 4, 2013). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

In order to state a claim upon which relief may be granted, Plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. There are numerous deficiencies in Plaintiff's Complaint that prevent the court from drawing this inference.

First, Plaintiff's Complaint contains no facts describing the nature of his disability and how such disability limits his major life activities. Further, he does not

8

allege that he is a "qualified" individual with a disability because he does not indicate that he satisfied the requisite skill, experience, education, and other job-related requirements of the position (other than having a chemical-application license) and, with or without reasonable accommodation, could perform the essential functions of the job. *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370-71 (8th Cir. 2018). For example, a 2012 report from Dr. Brent Adamson of Kearney Orthopedic & Sports Medicine attached to Plaintiff's Complaint limits Plaintiff to working "[m]aximum one hour at a time on his feet, 4 hours per day, maximum of 25 lbs repetitive lifting, 50 lbs occasional lifting," but the position for which Plaintiff applied required the "[a]bility to lift up to 50 to 100 pounds of force occasionally and to sit, stand, climb, balance, stoop, kneel, crouch, or crawl." (Filing 1 at CM/ECF p. 13.)

To the extent Plaintiff is relying on his "record" of disability as the reason for CPI's failure to hire him, he does not allege that CPI knew about such "record."[4] Also, Plaintiff has failed to allege facts indicating that his proposed accommodation (waiver of the CDL preferred qualification) is possible, reasonable, and would permit him to perform the essential functions of the sought-after job.

Without this basic information, no plausible claim for relief is stated. *See, e.g., Carlentine v. Duggan*, No. 8:19CV251, 2020 WL 1820129, at *3 & n.2 (D. Neb. Apr. 10, 2020) (finding on initial review that ADA plaintiff failed to state a claim upon which relief may be granted because he failed to allege any facts describing "the nature of his disability [and] whether his disability limited his major life activities and, if so, how . . . ."). To allow Plaintiff to allege such facts—if they exist—Plaintiff will be granted leave to file an amended complaint.

## B. 42 U.S.C. § 1983 Claim

---

[4] Having a record of a disability for purposes of the ADA means that an "individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population." 29 C.F.R. § 1630.2.

9

Plaintiff purports to sue Defendant under 42 U.S.C. § 1983 for "deprivation of rights." (Filing 1 at CM/ECF p. 1.) To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). An act violating the Constitution is considered to have occurred under color of law if it is "fairly attributable" to a governmental entity. *Meier v. St. Louis*, 934 F.3d 824, 829 (8th Cir. 2019) (quoting *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007)), *cert. denied*, 140 S. Ct. 2566 (2020).

To state a plausible section 1983 claim, Plaintiff must allege facts indicating that Defendant, a private corporation, is a governmental actor for purposes of section 1983 liability. In considering whether the conduct at issue is fairly attributable to the state, the court must consider "the extent to which the actor relies on governmental assistance and benefits; whether the actor is performing a traditional government function; and whether the incident is aggravated in a unique way by the incidents of governmental authority." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007) (citing *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 621-22 (1991)). Plaintiff makes no factual allegations whatsoever that Defendant is a state actor who may be sued under section 1983. *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001) (only state actors may be held liable under section 1983). Plaintiff will be given leave to file an amended complaint to allege such facts, if they exist.

## C. Motion for Appointment of Counsel

Plaintiff has filed a Motion for Appointment of Counsel. (Filing 10.) "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641

10

F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Pignotti*, No. 20-2560, 2021 WL 2285235, at *1 (8th Cir. June 4, 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)). Upon consideration of these factors, the court concludes that appointment of counsel is not indicated at this time.

### IV. CONCLUSION

In its present form, Plaintiff's Complaint fails to state a claim upon which relief can be granted. However, the court will grant Plaintiff 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently states his claims. In doing so, Plaintiff's amended complaint must restate the relevant allegations of his Complaint (Filing 1) and any new allegations. Plaintiff is warned that any amended complaint he files will supersede, not supplement, his prior pleadings.

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) after he files an amended complaint which addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED:

1. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff.

2. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Complaint (Filing 1) and any new allegations. Failure to consolidate all claims into **one document** may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

3. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event he files an amended complaint.

4. Plaintiff's Motion for Appointment of Counsel (Filing 10) is denied without prejudice.

5. The clerk of the court is directed to set a pro se case management deadline using the following text: July 11, 2022—amended complaint due.

6. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

DATED this 10th day of June, 2022.

BY THE COURT:

*Richard G. Kopf*
Richard G. Kopf
Senior United States District Judge